**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF PUERTO RICO**

| | |
|---|---|
| DAMARIS MARTINEZ, | |
| Plaintiff, | |
| | CIVIL NO. 19-2012 (GLS) |
| v. | |
| COMMISSIONER OF SOCIAL SECURITY, | |
| Defendant. | |

**OPINION AND ORDER**

Plaintiff Damaris Martínez seeks judicial review of the Commissioner of the Social Security Administration's denial of her application for disability insurance benefits pursuant to Section 205 (g) of the Social Security Act, 42 U.S.C. §405 (g). Docket No 4. Martínez alleges, in essence, that the Commissioner's decision was not based on substantial evidence as required by 42 U.S.C. § 405 (g). As a result, Plaintiff requests that the Commissioner's decision be reversed or, in the alternative, that it be remanded for further proceedings.

The parties consented to the entry of judgment by a United States Magistrate Judge under the provisions of 28 U.S.C. §636(c). Docket Nos. 9 and 10. After careful review of the administrative record and the briefs on file, the Commissioner's decision is **AFFIRMED**.

**I.     PROCEDURAL BACKGROUND**

Plaintiff worked as a surgeon assistant from 1996 until July 2012 (Tr. 56[1]).  In January 2012, Plaintiff suffered an accident with a patient during a surgery (Tr. 49-50) and, as a result of this work-related accident, she sought treatment at the State Insurance Fund ("SIF") (Tr. 174-233).  In November 2012, Plaintiff was involved in a car accident and received medical treatment from the Automobile Accident Compensation Administration (Tr. 159-173).  From the alleged onset date of July 10, 2012

---

[1] "Tr." refers to the transcript of the record of proceedings.

through the date last insured, March 31, 2018, Plaintiff sought treatment for pain in the cervical and lumbar areas as well as psychiatric treatment.

On May 4, 2016, Plaintiff filed an application for disability insurance benefits claiming that her disability began on July 10, 2012 (Tr. 470-474).  Plaintiff's application was denied on October 7, 2016 (Tr. 113-116) and, upon reconsideration, on December 1, 2016 (Tr. 117-119). As a result, Plaintiff requested a hearing, which was held on May 9, 2018 before Administrative Law Judge Rosael Gautier ("ALJ").  During the hearing, Plaintiff was represented by counsel and responded to questions posed by her attorney and the ALJ.  Also present to provide testimony were Dr. Jorge Hernández Denton, an internist who served as an impartial medical examiner; Dr. Luis Cápena, a psychiatrist who also served as an independent medical examiner; and Mrs. María De León, a Vocation Examiner ("VE")(Tr. 24-47).

On October 9, 2018, the ALJ issued a decision finding that Plaintiff was not disabled, as defined in the Social Security Act, at any time from the onset date of July 10, 2012 through March 31, 2018, the last date insured (Tr. 30-43).  Plaintiff asked the Appeals Council to review the final decision issued by the ALJ; however, the Appeals Council denied this request on September 14, 2019 (Tr. 1-9), making the Commissioner's decision the final decision for review by this Court.

## II.   LEGAL FRAMEWORK

### A.  STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), the court is empowered to affirm, modify, reverse or remand the decision of the Commissioner, based upon the pleadings and transcript of the record. 42 U.S.C. § 405(g). In reviewing a Social Security decision, the Court's function is limited to deciding whether the ALJ's decision is supported by substantial evidence from the record and based on a correct legal standard. See Seavey v. Barnhart, 276 F. 3d 1 (1st Cir. 2001); Manso-Pizarro v. Secretary of Health & Human Services, 76 F. 3d 15, 16 (1st Cir. 1996); Ortiz v. Secretary of Health & Human Servs., 955 F.2d 765, 769 (1st Cir. 1991). The Commissioner's findings of fact are conclusive when supported by substantial evidence, but not when obtained by ignoring evidence, misapplying the law, or judging matters entrusted to experts. See Nguyen v. Chater, 172 F. 3d 31, 35 (1st Cir. 1999). "Substantial evidence" is more than a "mere scintilla"; it is "such relevant evidence that a reasonable mind might accept as adequate to support a conclusion". Purdy v. Berryhill, 887 F. 3d 7, 13 (1st Cir. 2018); Visiting Nurse Ass'n Gregoria Auffant, Inc. v. Thompson, 447 F. 3d 68, 72 (1st Cir. 2006).  The Commissioner's findings must be upheld by the court if

a reasonable mind, reviewing the evidence in the record as a whole, could accept it as adequate to support his conclusion. See Rodríguez v. Secretary of Health and Human Services, 647 F. 2d 218 (1st Cir. 1981). If the ALJ's decision is supported by substantial evidence, it must be upheld, even if the record could arguably justify a different conclusion. See Rodríguez Pagán v. Secretary of Health and Human Services, 819 F. 2d 1, 3 (1st Cir. 1987).  Therefore, reversal of an ALJ's decision by a court is warranted only if the ALJ made a legal error in deciding the claim, or if the record contains no "evidence rationally adequate [...] to justify the conclusion" of the ALJ. Manso–Pizarro, 76 F.3d at 16.

In reaching the final decision, it is the Commissioner's responsibility to determine issues of credibility and to draw inferences from the evidence in the record. See Purdy v. Berryhill, 887 F. 3d 7 (1st Cir. 2018). To this end, courts will not second guess the Commissioner's resolution of conflicting evidence. See Irlanda Ortiz v. Secretary of Health & Human Services, 955 F. 2d 765, 769 (1st Cir. 1991).  In sum, this court's role is to determine "whether the final decision is supported by substantial evidence and whether the correct legal standard was used."  Seavey v. Barnhart, 276 F.3d at 9.

## B.  DISABILITY DETERMINATION BY THE SSA: FIVE STEP PROCESS

Plaintiff generally has the burden of proving that he/she has become disabled within the meaning of the Social Security Act. See Bowen v. Yuckert, 482 U.S. 137, 146 (1987); Rivera–Tufiño v. Commissioner of Social Security, 731 F.Supp.2d 210, 212–13 (D.P.R.2010).  The ultimate question is whether Plaintiff is disabled within the meaning of 42 U.S.C. § 423(d). That provision defines disability as the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted, or can be expected to last, for a continuous period of not less than 12 months. See 42 U.S.C. § 423. The severity of the impairment must be such that the claimant "is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial work which exists in the national economy." Deblois v. Secretary of Health and Human Services, 686 F.2d 76, 79 (1st Cir.1982) (quoting 42 U.S.C. § 423(d)(2)(A)).

In determining whether a claimant is disabled, a five-step sequential evaluation must be applied. 20 C.F.R. § 404.1520; Bowen, 482 U.S. at 140-142; Goodermote v. Secretary of Health and Human Services, 690 F.2d 5, 6–7 (1st Cir.1982). At step one, the ALJ determines whether the claimant is engaged in "substantial gainful activity" and, if so, the claimant is not disabled. 20 C.F.R. § 404.1520(b). If not engaged in substantial gainful activity, the decision-maker moves to the second step, where it must

determine whether the claimant has a medically severe impairment or combination of impairment that significantly limits claimant's physical or mental ability to do basic work activities. 20 C.F.R. § 404.1520(c). If the impairment or combination of impairments is severe, the third step applies. At this point, the ALJ must determine whether the claimant's severe impairments meet the requirements of a "Listed Impairment" which the Commissioner acknowledges are so severe as to preclude substantial gainful activity. See 20 C.F.R. § 404.1520(d); 20 C.F.R. Part 404, Subpt. P, App. 1. If the claimant has a listed impairment or an impairment equivalent in severity to a listed impairment, the claimant is considered disabled.

If the claimant's impairment does not meet a listed impairment, the ALJ must determine the claimant's Residual Function Capacity ("RFC"). 20 C.F.R. § 404.1520(e). An individual's RFC reflects his or her ability to do physical and mental work activities on a sustained basis despite limitations from his impairments. 20 C.F.R. §§ 404.1520(e) and 404.15245(a)(1). At step four, the ALJ must determine, taking into consideration the RFC, whether the claimant can perform past relevant work. 20 C.F.R. §§ 404.1520(f), 416.920(f). If not, then the fifth and final step applies.

At steps one through four, the claimant has the burden of proving he/she cannot return to his former employment because of the alleged disability. See Santiago v. Secretary of Health & Human Services, 944 F. 2d 1, 5 (1st Cir. 1991). The Commissioner has the burden under step five to prove the existence of other jobs in the national economy that claimant can perform, in view of claimant's RFC, age, education and work experience. See Ortiz v. Secretary of Health & Human Services, 890 F. 2d 520, 524 (1st Cir. 1989); 20 C.F.R. § 404.1520(g). If there are none, the claimant is then entitled to disability benefits. 20 C.F.R. § 404.1520(f).

To be eligible for disability benefits, the claimant must demonstrate that his disability existed prior to the expiration of his insured status, or his date last insured. See Cruz Rivera v. Secretary of Health & Human Services, 818 F. 2d 96, 97 (1st Cir. 1986).

### III.   DISCUSSION

On August 20, 2020, Plaintiff filed a memorandum of law seeking reversal or remand of the ALJ's final decision and, on November 5, 2020, the Commissioner submitted a memorandum in response. Docket Nos. 31 and 34. The Court's jurisdiction is limited to deciding whether the ALJ's decision is supported by substantial evidence from the record and based on a correct legal standard.

## A. THE ALJ DECISION

In the case at hand, when applying the five-step sequential analysis, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the alleged onset date through the last date insured (Tr. 32) and proceeded to step two of the analysis.  At the second step, the ALJ found that the claimant had the following severe impairments: degenerative disc disease of the cervical and lumbar spine; herniated nucleus pulposus at C5-C6; and major depressive disorder since March 4, 2013 (Tr 32).  The ALJ deemed, at the third step, that these impairments or combination of impairments did not meet or medically equal the severity of a Listed Impairment in 20 CFR Part 404, Subpart P, Appendix 1 (Tr. 33-37).  Having concluded step three of the analysis, the ALJ proceeded to determine Plaintiff's RFC.

The ALJ determined that, through the date last insured, Plaintiff could perform a full range of sedentary work as defined in 20 C.F.R. §404.1567 (a). Plaintiff could lift and/or carry, push and/or pull up to 10 pounds occasionally and less than 10 pounds frequently. She could sit 6 hours and stand or walk 4 hours in an 8-hour workday with normal breaks.  She could never climb scaffolds, ladders or ropes, but could occasionally climb ramps and stairs, stoop, kneel, crouch and crawl, and frequently balance. Plaintiff could handle, finger, and feel bilaterally on a frequent basis, she could never be exposed to unprotected heights, but could have occasional exposure to moving mechanical parts and operating a motor vehicle (Tr. 37-41).  In terms of Plaintiff's mental RFC, since March 4, 2013 she could perform simple, routine and repetitive tasks and could maintain concentration, persistence and pace 5 days a week, 8 hours a day with normal breaks. She could understand, remember and carryout simple instructions and deal with changes in a simple work setting; she could frequently interact with supervisors, co-workers, and the public (Tr. 33-41).

At the fourth step, the ALJ concluded that claimant was unable to perform any of her past relevant work (Tr. 41), and neither party disputes this conclusion.  The ALJ ended the sequential inquiry at step five when he concluded, after adopting the Vocational Expert's testimony, that through the date last insured there were jobs that existed in significant numbers in the national economy that the claimant could perform, considering the claimant's age, education, work experience, and residual function capacity (Tr. 41-43). Specifically, the ALJ concluded that Plaintiff could perform the following occupations: account clerk, addresser and call-out operator (Tr. 43).  And that the Vocation Expert's testimony was consistent with the information contained in the Dictionary of Occupational Titles. Consequently, the ALJ determined that Plaintiff was not disabled from the onset date through the date last insured (Tr. 43).

### B.  PLAINTIFF'S CHALLENGES TO THE RFC DETERMINATION

The Social Security defines an RFC as the most an individual can still do despite his or her limitations, and it is assessed based on all the relevant evidence in the individual's case records. 20 C.F.R. §404.1545.  In determining an RFC, all recorded medically determinable impairments that are suffered by claimant are considered, including non-severe impairments and the claimant's objective complaints. *Id.* An RFC assessment is "ultimately an administrative determination reserved to the Commissioner." Cox v. Astrue, 495 F.3d 614, 619 (8th Cir. 2007), citing 20 C.F.R. §§416.927(e)(2), 416.946.  But because "a claimant's RFC is a medical question, an ALJ's assessment of it must be supported by some medical evidence of the claimant's ability to function in the workplace." *Id.*  In this case, Plaintiff claims that the ALJ erred in its determination regarding both the physical and mental RFC.

#### 1.  DISABLING PAIN ASSESSMENT

Plaintiff claims that the ALJ erred by minimizing her subjective complaints of disabling pain. The ALJ must consider all symptoms and the extent to which they should *reasonably* be accepted as consistent with the objective medical evidence, as well as opinion evidence, and other evidence on record.  20 C.F.R. §404.1529; SSR 16-3p.  Contrary to Plaintiff's contention, the ALJ's determination regarding the RFC was based precisely on Plaintiff's testimony regarding her symptoms (Tr. 37-38); objective evidence on the record (Tr. 38-40) and the ability to perform daily activities (Tr. 40-41).

With regards to the assessment of Plaintiff's pain, the ALJ noted that in September 2012 a nerve conduction study showed radiculopathy at the lateral levels C5-C6, but three months later, the same study did not show any electrical evidence of a neuromuscular disease, and all nerve conduction studies were found normal (Tr. 39). In November 2012, after Plaintiff was involved in a car accident, a spinal x-ray showed straightening of the normal lordotic curvature due to muscle spasm and positioning, mild disc space narrowing at C5-C6 levels, and a normal thoracic spine, while there was mild disc space narrowing at the lumbosacral junction (Tr. 39 ref to 159-160, 162, 164).  Even though Plaintiff received therapy at ACAA, she refused referral for a face block because she thought it would worsen her condition (Tr. 75-76).  Moreover, it was noteworthy for the ALJ that Dr. Rafael Sanz, a treating physician, in April 2013 found that Plaintiff's MRI scan was normal and did not recommend any further physical therapy (Tr. 39 ref. to 614).  The ALJ noted that an MRI scan of Plaintiff's spine, taken in May 2013 (six months after the accident) showed bulging disks, but no central spinal canal stenosis (Tr. 39 ref. to 666). Then, in July 2013 an x-ray of Plaintiff's lumbar spine was negative for fractures or dislocations and showed that the

vertebral body heights and intervertebral disc spaces were well preserved (Tr. 39 ref. to 664).  According to medical examiner Dr. Jorge Hernández Denton, this evidenced an absence of pathology, no central canal stenosis and no neural foramina stenosis, and showed only bulging level al L4-L5 (Tr. 80).  A year after the accident, in November 2013, Plaintiff was diagnosed with myofascial pain of the back with no radiculitis and was referred to a chiropractor (Tr.  33 ref. to 164).  The ALJ also considered that Plaintiff's follow up visits with the SIF physicians from 2012 to 2014 showed that Plaintiff's upper and lower extremities were normal bilaterally, and she had no pain in the cervical spine (Tr. 39).  In addition, the ALJ considered that in February 2018 a CT scan of Plaintiff's lumbar spine did not show any disc herniation or any acute lumbar spine abnormality (Tr. 40 ref. to 814).  Notably, this CT scan was taken one month before the last insured date, that is, March 2018.

With regards to medication, Plaintiff complains that the ALJ and expert consultant Dr. Hernández Denton did not mention that, in addition to Neurontin, Plaintiff was prescribed other pain medications in 2012 and 2013, such as Relafen and Norflex. Docket No. 31 at 36-37.  However, during the hearing, Plaintiff stated that, to ease her pain, she took medication (Neurontin[2]) and other measures such as the use of a cane (sometimes a walker), applied ointments, visited the chiropractor, and used a girdle.  And, as the ALJ noted, when Plaintiff was referred for a facet block, she rejected this treatment (Tr. 38-39).  All these factors, which reflect Plaintiff's response to pain management, are part of the record that was evaluated by the ALJ. As such, the ALJ did take into account medication taken by Plaintiff to ease her pain and other measures used by Plaintiff to address her pain, in weighing Plaintiff's pain assessment and determining Plaintiff's RFC.  The ALJ presented a detailed analysis of the record, thus, she "was not obligated to discuss every bit of evidence." Frost v. Barnhart, 121 F. App'x. 399 (1st Cir. 2005); see also Barringer v. Comm'r of Soc. Sec., 358 F. Supp. 2d 67, 78 (N.D.N.Y. 2005)(the ALJ is not obligated to summarize every single medical record in the administrative transcript); Dyer v. Barnhart, 395 F.3d 1206, 1211 (11th Cir.2005)(there is no rigid requirement that the ALJ specifically refer to every piece of evidence in his decision).

With regards to daily living activities, the ALJ noted that Plaintiff was able to take care of herself and her hygiene, do all sorts of household chores such as cleaning and washing clothes, drive to run errands, manage her money and her medications, and that Plaintiff required no assistance to shower or get dressed

---

[2] According to Plaintiff's testimony, she does not visit a physician specialized in pain management and obtains this pain medication without a prescription (Tr. 75-76).

(Tr. 40).  Plaintiff's ability to engage in these basic activities of daily living was another of the various important factors considered by the ALJ in its RFC determination.

There is no question that Plaintiff had a physical impairment that could reasonably produce her pain. However, the limiting effects of that pain in the work that Plaintiff could perform must be based on medical records and other factors when evaluating Plaintiff's symptoms.  If, as in this case, Plaintiff complains of symptoms that suggest restrictions that are greater than the objective evidence reflects, the ALJ must consider other factors.  See 20 C.F.R. §404.1529(c); SSR 16-3p.  In this case, the ALJ appropriately considered several factors, such as medical records, Plaintiff's testimony at the hearing, her daily activities, the medications taken, and other measures taken by Plaintiff for relief of pain other than medication.

In sum, the ALJ's conclusion that the intensity, persistence and limiting effects of Plaintiff's pain was not entirely consistent with the medical evidence and other evidence on the record was based on substantial evidence.

### 2.  HYPOTHETICAL QUESTION TO THE VE

Plaintiff alleges that the VE's testimony was based on a flawed hypothetical question and, therefore, it did not constitute substantial evidence. Specifically, Plaintiff points to a question presented to the VE during the hearing in which she was asked to assume that a person could stand and walk five (5) hours (Tr. 103-107) when, in fact, this time limitation did not correspond to the four (4) hour maximum that the ALJ adopted in her decision. Docket No. 31 at 36-43.

This argument holds no water. In response to the first hypothetical question posed by the ALJ, the VE concluded that Plaintiff could not perform her past work (Tr. 105). This first hypothetical question established a **four (4) hour limit in standing and walking**. Then, the ALJ presented a second hypothetical question and asked the VE to base her answer on the same exertional and non-exertional limitations established in the first question (including the four (4) hours as the maximum time that a person would stand and walk).  In response to this second hypothetical question, the VE responded that there were several jobs in the national economy or the economy of Puerto Rico that Plaintiff could perform on a sustained basis, all classified as sedentary: account clerk, addresser and call-out operator (Tr. 105-106). The ALJ went along and asked the VE a series of additional hypothetical questions, including the one challenged by Plaintiff with a five-hour limit in standing and walking (Tr. 106-111).  Notably, to the

hypothetical question that Plaintiff contests (which included the five-hour limit), the VE responded that Plaintiff could perform the same jobs that were recommended in response to the question that included the four-hour limit (Tr. 106-107). This leads the Court to conclude that the RFC eventually determined by the ALJ was more favorable to Plaintiff because it included a time limit in standing and walking that was inferior to the amount that she could potentially perform in the job categories identified by the VE. However, the VE's testimony regarding the jobs in the industry that Plaintiff could perform was based on a hypothetical question that included a four-hour limit in standing and walking, and this limit coincides with the ALJ's RFC determination, therefore, it constitutes substantial evidence that supports the ALJ's determination. See Berríos López v. Secretary of Health & Human Services, 951 F. 2d 427, 429 (1st Cir. 1991); Vega v. Colvin, 164 F. Supp. 3d 249 (D. Mass. 2016) (reliance on the testimony of a vocational expert is proper if that expert is provided with an accurate assessment of the claimant's residual functional capacity).

Furthermore, Plaintiff claims that the ALJ should have summoned Dr. Pantojas to clarify the discrepancies in his report. Docket No. 31 at 42.  During the hearing with the ALJ, medical examiner Dr. Hernández Denton testified that there were discrepancies in  Dr. Pantojas' evaluation because he concluded that Plaintiff needed a cane, even though he found no deficit, normal reflexes, and did not measure Plaintiff's legs (Tr. 82 ref. to 752-754).  In its decision, the ALJ decided to give little weight to the opinion of Dr. Pantojas due to inconsistencies between his report and the evidence of record (Tr. 412). The ALJ went further and provided examples as to what those inconsistencies were; to wit, that Plaintiff's visits at the SIF showed normal upper and lower extremities bilaterally, that she did not have pain in the cervical spine, that nerve conduction studies were normal, and that treating physician Dr. Sanz noted a normal MRI scan and did not recommend further physical therapy (Tr. 412).  Therefore, the ALJ evaluated Dr. Pantojas' report in light of the medical record as a whole and decided to give little weight to his opinion. It was unnecessary for the ALJ to have Dr. Pantojas explain inconsistencies as the ALJ could simply discount the weight given to Dr. Pantojas' evaluation. "The responsibility for weighing conflicting evidence with respect to a claimant's eligibility for Social Security disability benefits, where reasonable minds could differ as to the outcome, falls on the Commissioner of Social Security and his designee, the ALJ." Seavey v. Barnhart, 276 F. 3d at 9 (citing Walker v. Bowen, 834 F. 2d 635, 639-40 (7th Cir. 1987)). The burden of weighing the evidence does not fall on the reviewing court. Seavey v. Barnhart, 276 F. 3d at 9.

Plaintiff also argues that it is unclear whether the SIF's files included impairments that are not work-related, and this "may have significantly figured into Dr. Pantojas' medical opinion." Docket No. 31 at 42.  It is not appropriate for the ALJ to engage in speculation. See Rodríguez v. Astrue, 694 F. Supp. 2d 36, 43 (citing Gilbert v. Apfel, 70 F.Supp.2d 285, 290 (W.D.N.Y.1999) ("In analyzing a treating physician's report, 'the ALJ cannot substitute his own judgment for competent medical opinion,' nor can [he] 'set his expertise against that of a physician who submitted an opinion.'")(quoting Balsamo v. Chater, 142 F.3d 75, 81 (2d Cir.1998)). Plaintiff's argument in thus flawed.

While Plaintiff may disagree with the ALJ's conclusions, it is the ALJ's responsibility to evaluate the record, weigh the evidence and resolve any discrepancy.  The ALJ's role is precisely to determine issues of credibility, to draw inferences from the record, and to resolve conflicting evidence; this is not the Court's role. See Irlanda Ortiz, 955 F. 2d at 769.  Moreover, it is the Court's duty to observe the deferential standard established by courts in reviewing the Commissioner's administrative decisions. See Evangelista v. Secretary of Health and Human Services, 826 F. 2d at 144.

### 3. MENTAL RFC DETERMINATION

The ALJ determined that, since March 4, 2013, Plaintiff could perform simple, routine, and repetitive tasks and could maintain concentration, persistence and pace 5 days a week, 8 hours a day with normal breaks. In addition, the ALJ determined that Plaintiff could understand, remember and carryout simple instructions and deal with changes in a simple work setting; she could frequently interact with supervisors, co-workers, and the public. The ALJ based her determination, not only on Plaintiff's testimony and what she described as her daily living activities, but on the testimony of experts such as Dr. Luis Cánepa, a psychiatrist and impartial medical expert who found that Plaintiff had only moderate limitations in all four broad areas of functioning: (1) understanding, remembering or applying information; (2) interacting with others; (3) concentrating, persisting or maintaining pace, and (4) adapting or managing oneself (Tr. 34).  The ALJ also considered Plaintiff's written testimony in a Function Report which informed that she spends time reading, watching television and knitting; that she could follow written instructions even though she needs occasional repetition, and does not need reminders to take care of her personal needs or take medications (Tr. 34 ref. to 122-130).

In addition, the ALJ considered the report rendered by Dr. José Ríos Robles, a psychiatrist and neurologist who evaluated Plaintiff and served as a consultative examiner in this process.  As noted by the ALJ, Dr. Ríos Robles observed that Plaintiff did not have any history of psychiatric hospitalizations, there

was no evidence of hallucinations, delusions, obsessions, compulsions or phobias; during the evaluation, she was adequately groomed, cooperative, sat in the chair closest to the interviewer, and maintained good eye contact; she was logical, linear and coherent in her evaluation, and appeared of average intelligence; she takes care of her personal needs, cooks, does household chores, drives, manages her money and medications, and requires no assistance to shower or gest dressed (Tr. 34 ref. to 709-712). Moreover, the ALJ also considered the observations of State Agency psychological consultants who concluded that Plaintiff could understand, recall and carry out simple instructions, adjust to minor routine work demands, relate in simple terms with others, sustain concentration for at least a two-hour interval and complete a workday without dealing with complex and detailed procedures (Tr. 36). Finally, the ALJ considered the medical records from Dr. Raúl Bravo, Plaintiff's treating physician, which like that of Dr. Ríos Robles, showed that Plaintiff generally had an unremarkable mental status (Tr. 36 ref. to 675-708; 713-750; 797-811).

Plaintiff claims that the ALJ misstated the frequency of Plaintiff's visits to Dr. Bravo. Docket No. 31 at 37. Specifically, Plaintiff sustains that when Dr. Luis Cánepa, psychiatrist who served as medical expert, testified at the hearing, he incorrectly mentioned that Plaintiff visited Dr. Bravo every three months (Tr. 101). However, to follow up questions from the ALJ, Dr. Cánepa indicated that the first session was March 4, 2013 and received continuous treatment without gaps. *Id*.  In its decision, the ALJ did state *when citing Dr. Cánepa's testimony* that Plaintiff visited Dr. Bravo every three months (Tr. 34). This was indeed Dr. Cánepa's testimony, so the ALJ accurately referenced his hearing testimony.  But of most importance is the fact that the ALJ also mentioned that Plaintiff's visits to Dr. Bravo were ongoing and without interruptions since March 2013 (Tr. 34).  Furthermore, the ALJ, upon determining Plaintiff's mental RFC, specifically stated that Plaintiff had testified that she visited Dr. Bravo monthly (Tr. 38). Therefore, the frequency of Plaintiff's treatment was accounted for by the ALJ, who in the end is responsible for resolving conflicting evidence. See Irlanda Ortiz, 955 F. 2d at 769.  Moreover, the Court agrees with the Commissioner in that Plaintiff does not demonstrate that this misstatement by Dr. Cánepa renders the ALJ's finding regarding Plaintiff's mental RFC devoid of substantial evidence.

In sum, Plaintiff did not meet the burden of proving that the ALJ erred in her determination. The Court finds that the ALJ properly evaluated and considered the record as a whole and that her determination is amply supported by substantial evidence in the administrative record.

IV.     CONCLUSION

After thoroughly and carefully reviewing the record, and there being no good cause to reverse or remand based upon a violation of the substantial evidence rule, the final decision of the Commissioner is **AFFIRMED**, and this action is dismissed.

**IT IS SO ORDERED.**

In San Juan, Puerto Rico, this 30th day of March, 2021.

_**s/Giselle López-Soler**_
GISELLE LÓPEZ-SOLER
United States Magistrate Judge